```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                    WESTERN DIVISION


UNITED STATES OF AMERICA                            PLAINTIFF

VS.                          CRIMINAL NO. 5:18-cr-20-DCB-FKB-3

JERRY LEE WHITE, JR.                                DEFENDANT
```

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Jerry Lee White, Jr. ("Defendant")'s Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release). [ECF No. 88] (the "Motion").  Having reviewed the Motion, the response in opposition, applicable statutory and case law, and being otherwise fully informed in the premises, the Court finds as follows:

BACKGROUND

This Court sentenced the Defendant on February 25, 2020, to a term of 30 months' incarceration for the crime of conspiracy to distribute a controlled substance under 21 U.S.C. § 846. [ECF Minute entry dated 02/25/2020; ECF No. 84].  The Defendant currently is imprisoned at the United States Penitentiary in Talladega, Alabama.  Federal Bureau of Prisons ("BOP") records that the United States filed under seal in this case indicate that:  (i) the Defendant may be eligible for release to home

1

detention on September 29, 2021; (ii) with continued good conduct, the Defendant could be released from BOP custody on December 28, 2021; and (iii) the Defendant's full sentence otherwise will expire on or about May 11, 2022. [ECF No. 102 at 104-08].

On July 30, 2020, the Defendant petitioned the warden of the Talladega Penitentiary for compassionate release based upon his medical concerns related to the COVID-19 virus and his hypertension and morbid obesity.  Motion at 2; [ECF No. 88-1 at 3]; [ECF No. 98 ("Opposition") ¶ 3 at 2].  The warden did not respond to the Defendant within 30 days of the warden's receipt of the Defendant's petition.  Opposition ¶ 3 at 2]; see also Motion at 2.

In the absence of a response from the warden, the Defendant filed his Motion with the Court on September 17, 2020 and moved for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A). [ECF No. 88].  The Defendant claims that his medical history of hypertension and obesity puts him at a greater risk of "life threatening complications" from COVID-19.  Motion at 5.

### DISCUSSION

#### I. Exhaustion of Administrative Remedies

Title 18 U.S.C. § 3582(c)(1)(A) authorizes a district court to grant a reduction of sentence upon motion by the Director of the

Bureau of Prisons or upon motion of the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 (thirty) days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[1]  The record shows no response from the warden within 30 days from the date of his receipt of the Defendant's compassionate release request.  [ECF No. 88-1 at

---

[1] 18 U.S.C. § 3582(c)(1)(A)(i)-(ii) provides:

(1) in any case--
(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
(i) extraordinary and compelling reasons warrant such a reduction; or
(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

18 U.S.C.A. § 3582(c)(1)(A)(i)-(ii) (West)

3

3].  The United States and the Defendant agree that the Defendant has exhausted the administrative remedy requirement of 18 U.S.C. § 3582(c)(1)(A). Opposition ¶ 3 at 2; see also Motion at 2.  The Court accepts the agreement of the United States and the Defendant.

## II. Extraordinary and Compelling Reasons

The Defendant moves this Court for a reduction of his sentence or release under Section 3582(c)(1)(A)(i), which permits the sentencing court to grant such a motion where "extraordinary and compelling reasons warrant such a reduction" and where "a reduction [would be] consistent with applicable policy statements issued by the Sentencing Commission," after consideration of the factors set forth in 18 U.S.C. 3553(a).

The United States Sentencing Commission has established guidelines to determine what constitutes an extraordinary and compelling reason for compassionate release.  Although not dispositive, the commentary to the United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 is instructive regarding what may be sufficiently "extraordinary and compelling" to warrant compassionate release. United States v. Thompson, 984 F.3d 431, 433 (5th Cir. 2021); United States v. Rivas, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the

4

commentary to U.S.S.G. § 1B1.13); United States V. Romez Jose Sabagh Cajeli, No. 4:13-Cr-38(17), 2021 WL 1616894, at *3 (E.D. Tex. Apr. 23, 2021) ("[W]hile recognizing that they are not binding, the court finds that the Commission's policy statement contained in § 1B1.13 and the commentary thereto inform its analysis as to what reasons may be deemed sufficiently extraordinary and compelling to warrant compassionate release.").

The comments to the U.S.S.G. provide four reasons that may justify the reduction of a prison term: (1) medical conditions, (2) age, (3) family circumstances, and (4) a catch-all for other reasons.  See U.S.S.G. § 1B1.13, Application Note 1(A)-(D) (2018).[2]  In his Motion, the Defendant relies on his medical

---

[2] The relevant comments to the U.S.S.G. provide:

**1. Extraordinary and Compelling Reasons.**--Provided the defendant [is not a danger to the safety of any other person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) **Medical Condition of the Defendant.**
(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
(ii) The defendant is—
(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process,

5

condition to justify a reduction in his prison term.[3]  The comments to the U.S.S.G. describe the circumstances in which a

---

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.** – The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**
(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.** – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, Application Note 1(A)-(D)(2018).

[3] In the list of reasons on the form motion that the Defendant filed with the Court, the Defendant checked the box for "serious physical or medical condition" and also checked the catch-all box for "other extraordinary and compelling reasons". Motion at 3. However, the Defendant essentially relies on his medical concerns to support his Motion and does not specify any non-medical reasons as grounds for his request. In the absence of sufficiently compelling "other reasons" for release, the Court will base its 18 U.S.C. 3582(c)(1)(A)(i) analysis on the Defendant's medical condition, and, following the Fifth Circuit's lead in Thompson, will decline to examine whether the catch-all provision can be considered by the courts. Thompson, 984 F.3d at 435, n.4 ("We recognize and opt not to weigh in on the split of authority as to whether this catch-all provision delegates only to the Bureau of Prisons — and not the courts — the task of identifying 'other reasons' justifying early

"[m]edical [c]ondition" might be sufficiently serious to warrant release, which are: where the defendant has either (i) a terminal illness or (ii) a condition "that substantially diminishes the ability of the defendant to provide self-care ....". U.S.S.G. § 1B1.13, Application Note 1(A); Thompson, 984 F.3d at 433.

Regarding the Defendant's medical condition, the medical records that the Defendant submitted to the Court show that he is a 44-year-old black male who suffers from hypertension and morbid obesity with a Body Mass Index greater than 40. [ECF No. 88-1 at 4-7]. He has been prescribed a four-drug regimen to control his hypertension: one Hydrochlorothiazide 25 MG tablet per day; one Lisinopril 20 MG tablet per day; one Metoprolol Tartrate 50 MG tablet per day; and one Nifedipine 90 MG tablet per day. Id. at 13-17. The Defendant's medical records do not indicate that his hypertension and obesity are terminal illnesses or that he has suffered any diminished ability in caring for himself. [ECF No. 88-1]. These medical records do, however, indicate that the Defendant was feeling well and normal

---

release. See United States v. Ruffin, 978 F.3d 1000, 1006–08 (6th Cir. 2020) (describing the circuit split). Even if courts properly can invoke the catch-all provision, Thompson's case does not present sufficiently compelling 'other reasons' for release, for the reasons explained below.").

7

at the time of his 14-day medical examination, that there were no new or acute problems to report, that he had a regular heart rate and rhythm, that a Review of Systems (ROS) revealed no general, cardiovascular, or pulmonary problems, and that he was compliant with his four-drug hypertension regimen. Id. at 9-14. These records do not show that the Defendant is suffering "extraordinary and compelling circumstances" which would warrant Defendant's release from incarceration. United States v. Ayon-Nunez, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020)("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.").

The Court is aware that current CDC publications indicate that people with hypertension and/or who are severely obese (BMI > 40 kg/m2) can be more likely to get severely ill from COVID-19.[4] But the Court also is aware that many decisions from the Fifth Circuit and other courts have found that hypertension and obesity are not considered extraordinary and compelling reasons that justify compassionate release. E.g., Thompson, 984 F.3d at 432-35; United States v. Gowdy, 832 F. App'x 325, 327 (5th Cir. 2020) (medicinally controlled hypertension was not an extraordinary and compelling reason for compassionate release);

---

[4] CENTERS FOR DISEASE CONTROL AND PREVENTION, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited April 29, 2021).

United States v. Stark, 831 F. App'x 129, 130 (5th Cir. 2020)(affirming the district court's finding that defendant's obesity, hyperlipidemia, and family history of heart disease, high blood pressure, and stroke did not put defendant at a heightened risk of exposure to the virus); United States v. Terrence Leavell, No. CR 07-202, 2021 WL 1517912, at *3 (E.D. La. Apr. 16, 2021) (defendant with high blood pressure, diabetes and obesity alleged nothing more than general concerns about possible exposure to COVID-19 and was not entitled to relief under § 3582); United States v. Ferrell, No. 1:16-cr-00259-TWP-MJD-1, 2020 WL 3871210, at *5, n.5 (S.D. Ind. July 8, 2020) (although CDC has stated that hypertension has been associated with increased illness severity and adverse outcomes, "association is not necessarily causation …").  As the district court aptly observed in United States v. Ferrell, "A compassionate release is an extraordinary and rare event, even during the present pandemic."  Id. at *5.

The Court also notes that the United States filed additional BOP medical records under seal in this case, which indicate that the Defendant tested positive for COVID-19 on December 22, 2020, but he did not exhibit symptoms of the virus. [ECF No. 102 at 1-5].  According to these records, the Defendant was quarantined, remained asymptomatic, and denied experiencing any symptoms of COVID-19.  Id.  The United States argues that

9

the Defendant's "motion is premised upon the increased risk of severe complications to his health that the virus poses while incarcerated given his existing medical conditions; however, his BOP records demonstrate that although he contracted the virus in December 2020, his existing medical conditions did not exacerbate the virus to make him severely ill while incarcerated."  Opposition at 3.  Courts have split regarding whether an individual who has recovered from COVID-19 can still show extraordinary circumstances for purposes of compassionate release.  See United States v. Diaz-Diaz, No. 17-CR-03505-BAS-1, 2020 WL 6161215, at *2–3 (S.D. Cal. Oct. 21, 2020).  Given the uncertainties in the science surrounding reinfection in COVID-19 cases, this Court cannot base its conclusion regarding the existence or absence of compelling and extraordinary circumstances in the Defendant's case wholly on records of an asymptomatic infection in December 2020.  See, e.g., United States v. Molley, No. CR15-0254-JCC, 2020 WL 3498482, at *2 (W.D. Wash. June 29, 2020) ("[W]e do not know to what degree or duration persons are protected against reinfection ... following recovery from COVID."; therefore, the possibility that a defendant might get reinfected and, the next time around, suffer more severe consequences, was too speculative to warrant relief); United States v. Yellin, No. 3:15-cr-3181-BTM-1, 2020 WL 3488738, at *3 (S.D. Cal. June 26, 2020)(the medical evidence

10

is still uncertain as to the effect of a recovery on future infection); United States v. Gates, No. 3:17-CR-150-DPJ-FKB, 2020 WL 3159184, at *3 (S.D. Miss. June 12, 2020)("While it is certainly tragic that Gates is among those federal inmates who have contracted COVID-19, the Court cannot say, on this record, that he is at higher risk or would otherwise be better off were he released from incarceration now.").

Recently, our courts have considered the BOP's implementation of its COVID-19 vaccination program in analyzing requests for compassionate release. E.g., Leavell, 2021 WL 1517912, at *3. As described by the BOP:

> The Bureau of Prisons (BOP) is working with the Centers for Disease Control and Prevention (CDC) and the Federal Government's COVID-19 Vaccine/Therapeutics Operation (formerly known as Operation Warp Speed), to ensure the BOP remains prepared to receive and administer the COVID-19 vaccine as it is made available. The BOP has received 146,829 doses and administered 143,392 doses of the COVID-19 vaccine.

https://www.bop.gov/coronavirus/. The BOP website indicates that, at the Talladega Penitentiary where Defendant is incarcerated, 116 staff members and 314 inmates have been fully inoculated (2 doses) with the COVID-19 vaccine as of 04/29/2021. The record before the Court does not indicate whether the Defendant is one of the Talladega inmates who has been fully inoculated. Nonetheless, the ongoing BOP vaccination program at the Talladega facility is an important consideration in

11

evaluating the Defendant's risk and a significant factor in the Court's conclusion that the Defendant's medical conditions are not sufficient to warrant an early release.

### III. Section 3142(g) Factors

Even if extraordinary and compelling reasons for early release did exist, the Guidelines' policy statements provide for a reduction in sentence only if a defendant "is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Factors relevant to this inquiry include: (1) the nature and circumstances of the offenses of conviction; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g). In his Motion, the Defendant does not address the issue of his potential danger to society. United States v. Ibarra-Zelaya, No. 4:04-CR-0150-02, 2021 WL 1092375, at *3-4 (S.D. Tex. Mar. 22, 2021) (a reduction in sentence was not warranted in case where the defendant did not provide evidence or allege facts showing that he "is not a danger to the safety of any other person or to the community"); United States v. Maldonado, No. 4:15-CR-0632-01, 2021 WL 981812, at *4 (S.D. Tex. Mar. 16, 2021).

The United States does address this issue in its Opposition and takes the position that as "a convicted drug trafficker of cocaine and methamphetamine, … [the Defendant] continues to pose the special danger of harm to the community as recognized by Congress, and his sentence should not be reduced … ." Opposition at 12. The United States further argues, and the Court agrees, that "[c]ompassionate release should not be granted except in cases in which the inmate clearly does not present a danger of recidivism or harm to the community … ." Id. at 9; see also 18 U.S.C. § 3553(a)(2)(c); Tucker v. United States, No. 2:17-CR-87, 2020 WL 4740480, at *3 (E.D. Va. Aug. 14, 2020)(compassionate release not appropriate where facially nonviolent offenders still present a substantial threat of recidivism); Dinning v. United States, 2020 WL 1889361, at *3 (E.D. Va. Apr. 16, 2020) (denying compassionate release because the petitioner "poses an ongoing danger to the community" based on his stated desire to return to the same positions of trust that facilitated his offense).

The Court has reviewed the Defendant's Proposed Release Plan [ECF No. 88-2] in determining whether the Defendant poses a risk of recidivism or danger to the community. Of concern to the Court is the Defendant's uncertain history of employment and his unverified employment post-release. The Proposed Release Plan states that the Defendant has secured post-release

13

employment at Terry Woodside Logging and Strap in Liberty, Mississippi.[5] [ECF No. 88-2 at 2]. The United States counters in its Opposition:

> Information in White's PSI, as well as in his proposed release plan, demonstrates that White's labor skills are not newly acquired in prison, and their existence prior to his conviction did not dissuade him from criminal activity or protect society from his drug trafficking crime. White's presentence investigation report reflects that his employment record shows no legitimate work history from 2010 through the time of his arrest in September 2018 (approximately 8 years). Only after White's arrest did he resume legitimate employment. [PSI, docket entry 82, page 1 (arrest date of 9/27/2018), and paragraphs 75-76, pages 11-12; cf. White's proposed release plan, docket entry 88-2, page 2]. Additionally, White's present employability in the restaurant industry is questionable during the ongoing pandemic when many restaurants have been forced to limit their operation and reduce staff.
> …
> While White believes he can return immediately to employment [Docket entry 88-2, page 2], according to White's PSI, he held his most recent job for only one year before his incarceration began while he was on pre-trial home detention with electronic monitoring, and verification of the employment had not been received by the U.S. Probation Office from White's former employer. [PSI, docket entry 82, paragraph 75]. There is no verification in the record by either BOP or the U.S. Probation Office that this employment opportunity still exists or that it remains a viable employment option during the ongoing pandemic.

Opposition at 9, 11.

---

[5] The Court does not find a company with that name listed on the Mississippi Secretary of State website but does find a dissolved company listed as T.W. Logging LLC, with an address in Liberty, Mississippi and a manager named Terry Woodside. Mississippi Secretary of State website (last visited April 29, 2021), https://corp.sos.ms.gov/corp/portal/c/page/corpbusinessidsearch/portal.aspx#

Having (i) conducted a hearing and sentencing of the Defendant on February 25, 2020 (see docket minute entry), (ii) issued a detailed (and restricted) Statement of Reasons [ECF No. 83], and (iii) rendered judgment as to the Defendant on March 16, 2020 [ECF No. 84], this Court is well-aware of the nature and seriousness of the Defendant's underlying crime, the weight of the evidence and the Defendant's guilty plea, and the history and characteristics of the Defendant. United States v. Guston, No. 312CR116-CWR-FKB-3, 2021 WL 149018, at *5 (S.D. Miss. Jan. 15, 2021)("Because this Court sentenced [Guston], the Court is intimately familiar with how these factors apply to his circumstances."); accord United States v. Scparta, No. 18-CR-578 (AJN), 2020 WL 1910481, at *8 (S.D.N.Y. Apr. 20, 2020). On this record and given the uncertainty of the Defendant's employment, the Defendant has not persuaded the Court that he would pose no danger of recidivism or harm to the community if he were granted early release from incarceration.

## IV. Section 3553(a) Factors

A final consideration in the Court's compassionate release analysis is to determine whether a reduction in sentence is consistent with the applicable Section 3553(a) factors. See 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. Similar to the factors already considered by the Court in its Section 3142(g)

analysis above, see Leavell, 2021 WL 1517912, at *4, the applicable Section 3553(a) factors include, among others: the defendant's history and characteristics; the nature and circumstances of the offense; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; the need to deter criminal conduct and protect the public from further crimes of the defendant; the need to provide the defendant with, inter alia, any needed medical treatment in the most effective manner.  18 U.S.C. § 3553(a).

   Regarding the factors related to the Defendant's sentence, the Court notes that it already sentenced this Defendant at the bottom of the calculated sentencing guideline range for this offense.  [ECF No. 84]; Presentence Investigation Report, [ECF No. 82 ¶ 83].  The sentence imposed fell below the statutory minimum sentence because the Defendant satisfied the requirements of the statutory "safety valve" at 18 U.S.C. § 3553(f). [ECF No. 83 at 2].  It is this Court's opinion that to reduce this sentence further by granting an early release would not respect the need for the sentence to (i) reflect the seriousness of the offense, (ii) promote respect for the law, (iii) provide just punishment for the offense; (iv) deter criminal conduct, and (vi) protect the public from further crimes of the Defendant.  18 U.S.C. § 3553(a).

In addition, the Court is not convinced that the Defendant's Proposed Release Plan [ECF No. 88-2] adequately provides for the ongoing medical care that he states he will need post-release. Id. at 3.  The Defendant concedes that he will not have access to health insurance if released.  Id. Although the Defendant states in his Proposed Release Plan that he would be willing to apply for government medical services, id., there is no assurance on this record that he would qualify for such assistance.  In short, the Defendant has presented no evidence to convince the Court that, as a released inmate, he would be safer from COVID-19 risks than he has been while incarcerated, and his access to medical treatment post-release appears less secure than it has been at the Talladega facility. United States v. Chambliss, 948 F.3d 691, 694 (affirming the district court's consideration of the defendant's need for effective medical treatment in balancing the Section 3553(a) factors and denying the defendant's motion for compassionate release).

For all the reasons stated herein, the Court concludes that there are no extraordinary and compelling reasons and no justification under either Section 3142(g) or Section 3553(a) to support the Defendant's request for early release under 18 U.S.C. § 3582(c)(1)(A).

Accordingly,

IT IS HEREBY ORDERED that the Defendant's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)(Compassionate Release)[ECF No. 88] is DENIED.

SO ORDERED, this the 30th day of April, 2021.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE
